UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**Travis D. Sanders,**

        Plaintiff,

v.                                              21-cv-6585-FPG-MJP

**Niagara County, et al.,**

        Defendants.

_____

**DECISION and ORDER**

**Pedersen, M.J.** Plaintiff Travis D. Sanders renews his earlier motion for appointment of counsel. (ECF No. 95, Sept. 5, 2024.) For the following reasons, the Court **GRANTS** his motion, but only for the completion of discovery. The Court will appoint a new attorney to represent Sanders, with its thanks to the attorney who assisted Sanders with his pending motion to amend.

Separately, the County Defendants move for an extension of deadlines, requesting that the Court impose deadlines for Sanders to respond to outstanding discovery. (ECF No. 100, Sept. 30, 2024.) While the Court **GRANTS** the motion for an extension of deadlines, the Court **DENIES** the County Defendants' request to impose deadlines on Sanders.

Instead, the Court directs the parties to meet, confer, and (1) propose new deadlines for an amended scheduling order that fall on

1

business days and (2) propose a deadline by which Sanders will respond to outstanding discovery. To prevent this case from stalling, the Court directs Sanders to continue working on his responses to Defendants' discovery demands and to meet and confer with Defendants. Once appointed, *pro bono* counsel will assist Sanders with anything that remains for his responses. *Pro bono* counsel will then assist Sanders until discovery is complete, including fact and possibly expert depositions.[1] The attorney the Court selects should anticipate the possibility of being asked to continue *pro bono* representation through dispositive motions.

## I. The Court grants the County Defendants' motion for an extension of deadlines.

The County Defendants move for an extension of deadlines with Sanders' consent. The Court grants this request, although not for the reasons the County Defendants provide.

According to the County Defendants, Sanders and all Defendants agreed not to exchange discovery until Sanders' pending motion to amend was filed. (County Defendants' Letter at 1, ECF No. 85, May 2, 2024; Decl. in Resp. to Pl.'s Mot. for Appointment of Counsel ¶¶ 10–11, ECF No. 99, Sept. 19, 2024.) Sanders disputes this, arguing that he agreed not to pursue discovery that would pertain only to his proposed

---

[1] Any request for expert discovery funding must be made pursuant to this District's Guidelines Governing Reimbursement from the District Court Fund.

third amended complaint. The Court declines to wade into this dispute, except to note the following.

*First*, the Court cannot enforce any attempt at an "informal stay." Relevant here, the Federal Rules are binding.[2] *Cardew v. New York State Dep't of Corr. & Cmty. Supervision*, No. 21-CV-6557-CJS-MJP, 2024 WL 3647784, at *2 (W.D.N.Y. Aug. 5, 2024). The Court must accordingly reject the County Defendants' "position that [Sanders] could not demand discovery responses from the County Defendants while simultaneously taking advantage of the stay." (Mot. for Extension at 1, ECF No. 100 (alteration added).) Fed. R. Civ. P. 26 vests the power to oversee discovery in the Court. Court approval is specifically required for many things, including a stay of discovery (or protective order) pursuant to Fed. R. Civ. P. 26(c).

*Second*, the Court sees no reason to characterize the informal stay involved here as falling under Fed. R. Civ. P. 29(b). The parties do not characterize the informal stay as a stipulation. And the Court finds the County Defendants' conduct inconsistent with such a finding. It appears that the County Defendants declined to produce discovery until the Court clarified that no stay was (or could be) in place. (Decl. in Resp. to

---

[2] Ironically, the County Defendants used a similar statement of black-letter law against Sanders. (Letter at 1, ECF No. 85 ("We note that FOIL requests cannot be used as a sword to undermine and circumvent the Federal Rules of Civil Procedure, which govern discovery in this action.").)

Pl.'s Mot. for Appointment of Counsel ¶¶ 10–11, 13, ECF No. 99; *see also id.* ¶ 21 ("The County Defendants also requested sixty (60) days to respond to Plaintiff's First Request for Production of Documents, given the breadth of Plaintiff's document requests."); County Defendants' Letter at 1, ECF No. 85, May 2, 2024 ("We reiterate our position set forth in our correspondence to you dated January 23, 2024, which is that our office will respond to the First Request for Production of Documents after an amended complaint has been filed.").) When Sanders disputed whether the "informal stay" applied to all discovery, or only that discovery that the parties would have to conduct regardless of the outcome of Sanders' pending motion to amend, the County refused to respond. That is indicative of a stay; not a stipulation.

*Third*, as discussed later in this decision and order, Sanders is asking for additional time to respond not because he is dragging his feet, but because he is having difficulty responding to discovery based on his current residence in a halfway house. The County Defendants' sudden demand for discovery response deadlines accordingly troubles the Court.

This demand also troubles the Court because the need for new deadlines seems to be of the parties' making. The "informal stay" has delayed the exchange of discovery, creating the need for the Court to extend deadlines. Ordinarily, this would not amount to the good cause necessary to extend deadlines under Fed. R. Civ. P. 16(b)(4). *See George*

4

*v. City of Buffalo*, 789 F. Supp. 2d 417, 425 (W.D.N.Y. 2011) ("Good cause exists where the moving party is unable to comply with a required deadline despite the exercise of due diligence." (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000))). The Court admonishes the parties, particularly the County Defendants as they are represented, to follow the Federal Rules.

In its discretion, the Court will grant the parties an extension of deadlines. Sanders' email and motion for appointment of counsel document difficulties with assembling and exchanging discovery. (Mot. for Extension Ex. A, ECF No. 100-1.) From the Court's reading of it, Sanders' email requests an extension not because Sanders is trying to game the "informal stay" to which he purportedly agreed but because Sanders is having genuine difficulty navigating discovery from the halfway house where he resides. (*See generally id.*) Further, it is unlikely that Sanders understood that the Federal Rules do not provide for an "informal stay."

With that in mind, the Court likewise declines to direct Sanders to respond by dates certain. (Mot. for Extension at 2, ECF No. 100 ("The County Defendants also respectfully request that [Sanders] be directed to provide executed HIPAA authorizations to the County Defendants within seven (7) days of the Court's order with respect to this letter request and that [Sanders] be directed to provide discovery responses to the County Defendants' discovery demands within thirty (30) days of

5

September 29, 2024, i.e., no later than October 29, 2024." (alterations added)).) The County Defendants may not demand deadlines when the informal stay to which they agreed has backed them up against the deadline for motions to compel. Instead, the Court directs the parties to meet, confer, and propose a new set of scheduling order deadlines, along with an agreed-upon deadline for Sanders to produce outstanding discovery that reflects his situation.

## II. The Court also grants Sanders' motion for appointment of counsel.

### A. Applicable law.

"Unlike criminal defendants, prisoners and indigents filing civil actions have no constitutional right to counsel." *Mackey v. DiCaprio*, 312 F. Supp. 2d 580, 581 (S.D.N.Y. 2004) (quotation omitted). Still, in rare cases, the Court may appoint an attorney to help a *pro se* party. *See, e.g., Sears, Roebuck & Co. v. Charles W. Sears Real Estate, Inc.*, 865 F.2d 22, 23 (2d Cir. 1988). The decision to appoint counsel "rests with the discretion of the court." *In re Martin-Trigona*, 737 F.2d 1254, 1260 (2d Cir. 1984) (citation omitted). But the Court is mindful that there are far more requests for attorneys than the Court can provide. *See Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989) ("Volunteer lawyer time is a precious commodity" that "should not be allocated arbitrarily."). The Court should accordingly consider the law before granting an attorney to a pro se party. The relevant law here is 28 U.S.C. § 1915(e)(1) and

6

Second Circuit case law applying this provision. This provision states: "The court may request an attorney to represent any person unable to afford counsel." *Id*.

As before, there is no serious question here that Sanders cannot "afford or otherwise obtain counsel." *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994). Judge Geraci granted Sanders' motion for leave to proceed *in forma pauperis*. (Order, ECF No. 9, Dec. 2, 2021.) And Sanders has tried to find counsel. (Renewed Mot. to Appoint Counsel ¶¶ 57, 59–60, ECF No. 95; Mot. to Appoint Counsel Ex. 3, ECF No. 72.) The Court will therefore address the below factors, including the threshold "substance" factor:

> 1. "Whether the case appears likely to be of substance."
>
> 2. "The indigent's ability to investigate the crucial facts."
>
> 3. "Whether conflicting evidence implicating the need for cross-examination will be the major proof presented."
>
> 4. "The indigent's ability to present the case[.]"
>
> 5. "The complexity of the legal issues."
>
> 6. And finally, "any special reason … why appointment of counsel would be more likely to lead to a just determination."

*Johnston v. Maha*, 606 F.3d 39, 42 (2d Cir. 2010) (reformatted as a list) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61–62 (2d Cir. 1986)).

### B. Application to this case.

*1. Whether the case appears likely to be of substance.* "In considering whether to request that a volunteer attorney take the case, a

7

court must first consider whether the case meets 'a threshold showing of some likelihood of merit.'" *Velasquez v. Metro Fuel Oil Corp.*, 12 F. Supp. 3d 387, 403 (E.D.N.Y. 2014) (quoting *Johnston*, 606 F.3d at 41). "If the claim meets this threshold requirement, the court should then consider" other factors. *Hodge v. Police Officers*, 802 F.3d 58, 61 (2d Cir. 1986).

As Sanders correctly points out, this Court already stated that it "believes that Sanders' allegations satisfy this requirement. Sanders pleads a sufficient relationship between Defendants' actions and his eventual injury." *Sanders v. Niagara Cnty.*, No. 21-CV-6585-FPG-MJP, 2023 WL 7528358, at *5 (W.D.N.Y. Nov. 14, 2023) (citing *Mackey*, 312 F. Supp. 2d at 582). The Court sees no reason to disturb its earlier finding.

    2.    *The* pro se *party's ability to investigate.* Second, Sanders has limited ability to investigate his claims. But this Court noted the problem with appointing counsel in every *pro se* prisoner case:

> Many prisoners present the Court with arguments that incarceration alone makes it difficult to investigate their claims. Such arguments are unhelpful: this is true of every *pro se* prisoner. If the Court gave every *pro se* prisoner legal counsel on this basis, the Court would quickly exhaust its *pro bono* resources, leaving other *pro se* litigants out in the cold.

*Sanders*, 2023 WL 7528358, at *5. The Court nonetheless appointed limited scope counsel because Sanders presented a unique situation. It appears this is still the case.

8

Here, Sanders has been "transferred to the Residential Reentry Center" ("RRC") in Buffalo, NY. (Mot. for Appt. of Counsel ¶ 9, ECF No. 95.) Sanders provides extensive argument about how being in this facility makes investigating his claims difficult:

- Sanders notes that RRC "does not have any law library resources" and that he will "continue to be incarcerated [there] until January 2, 2025." (*Id.*) Sanders thus lost access to the Bureau of Prison's electronic law library. (*Id.*)

- Sanders can only occasionally visit a law library. (*Id.* ¶¶ 13–15 ("I have been given very limited access to travel to this law library since arriving at the RRC on July 10, 2024. In total, I have only been able to access this law library on four occasions, for a total amount of time of approximately 6 hours.").) Indeed, Sanders states that he will only be able to access the law library "a maximum of two hours per week." (*Id.* ¶ 17.)

- The law library does not permit Sanders to access discovery materials that Defendants provided him on a USB. (*Id.* ¶ 47.)

- Sanders further alleges that he needs help with depositions. (*Id.* ¶ 25.)

These facts favor the appointment of counsel because they illustrate the unique difficulties Sanders faces in obtaining discovery.

Sanders adds that Defendants stymied his ability to investigate his claims by "unilaterally declar[ing] a 'stay' on discovery dating back to January 23, 2024," to which Sanders purportedly objected. (*Id.* ¶ 19.) As discussed, the "informal stay" is problematic. Even so, the Court finds no reason to believe that Defendants were (or are) proceeding in bad faith. Instead, it appears the parties disagreed about the scope of the

9

"informal stay," with Sanders believing that discovery should have proceeded on his claims that would be part of this case regardless of another motion to amend. Again, the Court sees no reason to wade further into that dispute, given its approval of extended deadlines. The Court thus expects the parties will put issues like this behind them and move forward with discovery.

      3.    *Conflicting evidence.* Next, the Court must ask if conflicting evidence will require Sanders to cross-examine witnesses. Sanders believes he will need to cross-examine Defendants and their employees about his medical records. (*Id.* ¶¶ 39–40.) However, it is not yet clear that this case will make it to trial. The Court thus declines to analyze this factor.

      4.    *The* pro se *party's ability to present the case.* Regarding his abilities, Sanders' submissions and arguments to the Court do not "demonstrate[ ] any marked difficulties in presenting his case." *Mackey*, 312 F. Supp. 2d at 582 (alteration added). To the contrary, his arguments to this Court about initial disclosures suggest he is "sufficiently knowledgeable and equipped to understand and handle th[is] litigation." *Nelson v. McGrain*, No. 12-CV-6292, 2017 WL 4155420, at *3 (W.D.N.Y. Sept. 19, 2017) (alteration added). While the Court hesitates to hold Sanders' *pro se* motion for appointment of counsel against him, Sanders

has effectively and succinctly made out his motion. This factor favors denial of Sanders' motion.

    5.    *Complex legal issues.* Fifth, the Court looks at if the case involves complex legal issues. *See Ledesma v. Garland*, 850 F. App'x 84, 89 (2d Cir. 2021) (holding that because "appeal raise[d] several issues that were both complex" and meritorious, appointment of counsel was warranted) (alteration added); *see also Johnston*, 606 F.3d at 42 (appointing counsel in part because "[t]he legal issues raised in this appeal are fairly complex[.]") (alterations added).

As with the substance factor, the Court finds no reason to disturb its earlier conclusion. *See Sanders v. Niagara Cnty.*, No. 21-CV-6585-FPG-MJP, 2023 WL 7528358, at *6 (W.D.N.Y. Nov. 14, 2023) (finding that this factor favors appointment of counsel because Sanders will have difficulty investigating "the conditions … of his confinement" (quoting *Kelly v. Selsky*, No. 00 CIV. 3919HBKNF, 2001 WL 69435, at *2 (S.D.N.Y. Jan. 26, 2001))). Moreover, Sanders' claims about inadequate care and inadequate COVID-19 precautions are not garden-variety prisoner claims. They present unique questions that may require medical experts and testimony.

    6.    *Just determination.* Finally, the Court must ask if an attorney's help would increase the chances of a "just determination." This is a fact-heavy case that is likely to require medical expert testimony

and an extensive review of COVID-19 protocols and Sanders' medical records. As such, this is not a case that involves a straightforward application of precedent; accordingly, this factor favors the appointment of counsel. *See Johnston*, 606 F.3d at 42 ("It is plainly helpful to us at oral argument to have effective briefing of a plaintiff's central claims, particularly when those claims go to the heart of issues that may not be straightforwardly resolved by our prior precedents.").

## CONCLUSION

The Court **GRANTS** Sanders' pending motion for appointment of counsel, appointing counsel for the duration of discovery in this case. The Court **GRANTS** the pending motion for an extension of deadlines. Because the County Defendants did not propose specific new deadlines, the Court **ORDERS** the parties to meet, confer, and propose deadlines falling on a business day for an amended scheduling order (and for Sanders to produce outstanding discovery) by no later than November 1, 2024. The Court **DENIES** the County Defendants' request that Sanders be directed to produce certain discovery and other documents by dates certain.

**IT IS SO ORDERED.**

Dated: October 3, 2024
Rochester, NY

*/s/ Mark W. Pedersen*
MARK W. PEDERSEN
United States Magistrate Judge